# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARIS JAMES, | ) | |
|     Plaintiff, | ) | Civil Action No. 14-69Erie |
| | ) | |
| v. | ) | District Judge Motz |
| | ) | |
| DEBRA SAUERS, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss the original complaint [ECF No. 14] be dismissed as moot in light of the filing of the amended complaint.

It is further recommended that the motion to dismiss the amended complaint [ECF No. 30] be granted in part and denied in part, as follows:

- Denied as to claims arising before February 19, 2012, based upon the statute of limitations;

- Denied as to Defendant Heberling based on Fed.R.Civ.P. 25;

- Granted as to the lack of personal involvement of Smith and Smith should be dismissed from this action;

- Denied as to the lack of personal involvement of Sauers, Tice, Overmyer, Cole, Repco, and Ennis;

- Granted as to the Eighth Amendment claim against Murin, Fultenberger, and Griffin based upon deprivation of food, but only Defendant Griffin should be dismissed from this action;

- Denied as to the Eighth Amendment claim based upon the denial of Z-code status; and

- Denied as to the Eighth Amendment claim based upon delay in treatment in September of October of 2012.

1

## II. REPORT

### A. Relevant Procedural History

This civil action was filed in this Court on March 3, 2014. Plaintiff, an inmate in state custody, brought this civil rights action alleging that his constitutional rights have been violated by many Defendants in numerous ways. As Defendants to this action, Plaintiff has named: Debra Sauers; Eric Tice; Michael Overmyer; Wanye Cole; Andre Repco; Paul Ennis; Kim Smith; Bruce Simons; Jeffery Moll; Lieutenant E. Apadac; Lieutenant Murn; Rhonda Sherbine; Edward Heberling; Angelo Perillo; Michelle Crowder; Dr. McGarvie; Nurse Jane Doe; and Correctional Officers Wilson, Hollis, Gadley, Asp, Filtenberger, Griffin, and John Does 1 and 2.[1]

> In response to the Original Complaint, Defendants filed a motion to dismiss arguing:
> - the statute of limitations bars some of Plaintiff's claims;
>
> - Plaintiff has failed to adequately allege the personal involvement of Sauers, Tice and Overmyer
>
> - Plaintiff has failed to state an Eighth Amendment excessive use of force claim.

See ECF No. 15.

In opposition to Defendants' motion to dismiss, Plaintiff filed a proposed Amended Complaint. ECF No. 20. The proposed Amended Complaint is deemed filed.

Plaintiff's seventy-five page Amended Complaint details a campaign of retaliation beginning in February of 2011. Besides many retaliation claims, Plaintiff raises numerous other

---

[1] According to the docket, Defendants Moll, Sherbine, McGarvie, Nurse Jane Doe, and Correctional Officers John Doe 1 and 2 have not been served.

2

federal constitutional violations under the First, Eighth and Fourteenth Amendments.[2] In response to the Amended Complaint, Defendants filed a partial motion to dismiss[3], this time arguing:

- The statute of limitations bars some of Plaintiff's claims;

- All claims against Defendant Heberling must be dismissed in accordance with Rule 25;

- Plaintiff has failed to allege the personal involvement of Sauers, Tice, Overmyer, Cole, Repco, Ennis and Smith;

- Plaintiff has failed to state an Eighth Amendment claim against Murin, Fultenberger and Griffin; and

- Plaintiff has failed to state a claim for the denial of medical care.

ECF No. 31.

---

[2] While Plaintiff mentions the Americans with Disabilities Act, even liberally construing his allegations, Plaintiff has failed to state such a claim. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "State prisons fall squarely within the statutory definition of 'public entity' " under Title II, and therefore this provision applies to state prisoners such as Plaintiff while they are incarcerated. Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

Initially, it is noted that an ADA claim under Title II may only be brought against a public entity, which, in this case, would be the Department of Corrections. Furthermore, a claim under Title II requires Plaintiff to show that: 1) he is an individual with a disability; 2) he is otherwise qualified for the program or services sought or would be qualified if the defendant had made reasonable modifications to the program or services; and 3) he was excluded from the program or services solely by reason of [his] disability. Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009 (3d Cir. 1995). Here, even if the Court presumes, for argument sake, that Plaintiff is a qualified person with a disability, he would still have the nonsensical burden of showing that he was excluded from receiving medical services solely by reason of his disability. This he has not alleged.

[3] Defendants acknowledge that not all of Plaintiff's claims are addressed in their motion to dismiss. See ECF No. 31, page 2.

3

In opposition to Defendants' motion to dismiss the amended complaint, Plaintiff has filed an opposition brief. ECF Nos. 36, 37. Additionally, Defendants filed a Reply and Plaintiff filed a Sur-reply. ECF Nos. 40, 41.

### B. Standards of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

#### 2. Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This

'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C. Statute of limitations

Defendants argue for the dismissal of all of Plaintiff's claims that arise before February 19, 2012.

A district court may dismiss a complaint on a Rule 12(b)(6) motion based on the time bar of the statute of limitations only if it can determine (before the factual record is fully developed) when the claim accrued and whether any tolling periods apply. Oshiver v. Leven, Fishbein, Sedran & Berman, 38 F.3d 1380, 1381 n.1 (3d Cir. 1994) ("While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a 12(b)(6) motion, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").[4] In

---

[4] See also Cooper v. Beard, 2006 WL 3208783 (E.D. Pa.) ("Federal Rule of Civil Procedure 12(b) does not include a limitations defense. Thus, a limitations defense must be raised in the

6

addition to the complaint, at this stage in the litigation the Court may consider matters of public record, exhibits to the complaint, and undisputedly authentic documents attached to the motion to dismiss. Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006); Pryor v. Nat'l Collegiate Athletic Assoc., 288 F.3d 548, 560 (3d Cir. 2002).

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1989). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a §1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir.2000); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451 (3d Cir. 1996).

While the statute of limitations itself is a matter of state law, "the accrual date of a § 1983 claim is a matter of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). A claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based." Sameric, 142 F.3d at 599.

Here, Plaintiff's original complaint was received by this Court on March 3, 2014; however, the complaint was apparently signed by Plaintiff on February 19, 2014. See ECF No. 5; see also ECF No. 1-2, envelope and letter from USPS indicating that mail was damaged by

---

answer, since Rule 12(b) does not permit it to be raised by motion. See id.; Robinson [v. Johnson], 313 F.3d [128], 135 [(3d Cir. 2002)]. "However, the law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Robinson, 313 F.3d at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id.).

mechanical processing equipment. For purposes of applying the statute of limitations, this Court, at this early stage of the proceedings, will treat February 19, 2014, as the relevant filing date pursuant to the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 275-76 (1988).[5] Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to February 19, 2012, is barred by the statute of limitations.

The Amended Complaint details numerous events that occurred before February 19, 2012. Claims arising out of these events are beyond the statute of limitations and are therefore time barred. However, Plaintiff argues that the statute of limitations should be equitably tolled[6] because Defendants' actions constitute continuing violations.

"The continuing violation doctrine [ ... ] is an 'equitable exception to the timely filing requirement.'" Voice for Independence v. Pennsylvania Dep't of Transp., 2007 WL 2905887, at *4 (W.D. Pa.) quoting Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001). "The application of the continuing violations theory may be appropriate in cases in which a plaintiff can demonstrate that the defendant's allegedly wrongful conduct was part of a practice or pattern of conduct in which he engaged both without and within the limitations period." McAleese v.

---

[5] See also Longenette v. Krusing, 322 F.3d 758 (3d Cir. 2003); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (prison mailbox rule provides that "a *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."); Nichols v. Bowersox, 172 F.3d 1068, 1074 (8th Cir. 1999) (explaining "the 'prison mailbox rule' which, as the name suggests, would establish the date of filing as the date on which the prisoner puts the proverbial 'letter' in the proverbial 'mailbox'—in other words, the date on which he or she deposits the petition in the prison mail system."); Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa.Super.2001) citing Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998) (in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]").

[6] Equitable tolling is extraordinary relief, and is appropriate only when: (1) a defendant actively misleads a plaintiff regarding his or her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his or her claim in the wrong forum. Lake, 232 F.3d at 370 n.9.

Brennan, 483 F.3d 206, 218 (3d Cir. 2007) citing West v. Philadelphia, Elec. Comp., 45 F.3d 206, 218 (3d Cir. 2007). In other words, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Montanez, ___ F.3d at ___, 2014 WL 5155040, at * 5, quoting Cowell, 263 F.3d at 292.

In Cowell, the Third Circuit noted that "the focus of the continuing violations doctrine is on the affirmative acts of the defendants" (id. at 293, citing Delaware State College v. Ricks, 449 U.S. 250, 258 (3d Cir. 1980)), and set forth three factors that must be considered in applying the doctrine of continuing violation to equitably toll the statute of limitations:

1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation;

2) frequency—whether the acts are recurring or more in the nature of isolated incidences; and

3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id. at 292.

In order to make this determination, this Court must review Plaintiff's time barred allegations here. Plaintiff's narrative begins when he reported harassment by unnamed correctional officers to Defendant Heberling in February of 2011. ECF No. 20, ¶ 32. Plaintiff claims he had previously reported harassment by staff to Heberling, Perillo, and Ennis. These Defendants made it known to Plaintiff that he would not be protected or transferred out of SCI Forest. An administrative transfer was approved, but was later revoked by Heberling and Perillo.

Plaintiff continued to suffer threats of physical violence and sexual harassment by corrections officers Id. at ¶ 38. Plaintiff went to Heberling and requested a separation transfer from the unnamed correctional officers. Heberling did not report the abuse to his superiors, did not begin an investigation, and did not issue a transfer, but instead "advised Plaintiff that he wanted Plaintiff to assault an inmate who was making lewd offensive comments regarding Defendant Heberling's wife, upon information and belief that she was having an inappropriate relationship with an inmate." Id. at ¶ ¶ 39-43. Defendant Heberling told Plaintiff that he would not pursue or approve a transfer for him until Plaintiff assaulted the other inmate. Id. at ¶ ¶ 45-47.

After agreeing to commit the assault on behalf of Heberling, Plaintiff injured his back in a work-related accident on March 9, 2011. Id. at ¶ 48. Around March 28th, Plaintiff became aware that his son had been transferred to SCI Forest. Id. at ¶ 49. Plaintiff went to Heberling and requested that his son be housed on the same block as Plaintiff, as was common practice. Id. Heberling denied Plaintiff's request on the basis that there was no biological relationship between the two. Heberling explained that there was no reason to move Plaintiff's son because Plaintiff would be transferred out of the institution as soon as he committed the assault on the other inmate. Id. at ¶ 50-51.

Plaintiff alleges that evidence came to light that Heberling's wife was engaged in an inappropriate relationship with an unidentified inmate and Heberling took "personal leave to address the matter." Id. at ¶ 52. While Heberling was on personal leave, Ms. Houp (acting as Plaintiff's Unit Manager), along with Apadac, and Perillo, authorized the move of Plaintiff's son to the block. Id. at ¶ 53. When Herberling returned to work, he was enraged that Plaintiff's son had been transferred onto the block and he threatened to reverse the transfer. Id. at ¶ 54. At this

time, Plaintiff informed Heberling that he would not commit the assault on the other inmate, because he did not want to get in trouble and lose his job, and he was in too much pain from the back injury. Id. at ¶ 56. Heberling told Plaintiff that if he refused to commit the assault, Heberling would continue to do nothing to help Plaintiff with the continued physical threats and sexual harassment by unnamed staff and would move Plaintiff's son. Id. at ¶ 58.

Plaintiff went to Perillo for assistance, with the underlying sexual harassment as well as Heberling's ongoing efforts to convince Plaintiff to commit the assault. Id. at ¶ 60-63. Plaintiff wanted to file an abuse complaint against Heberling, but Perillo refused to act on Plaintiff's information. Id. at ¶ ¶ 64-66.

On April 25, 2011, Plaintiff sought a transfer by way of an inmate request to Defendant Sauers. Id. at ¶ 67. Plaintiff also informed Sauers of his ongoing problems with staff, but Sauers took no action. Id. at ¶ ¶ 68-74.

Later, Heberling told Plaintiff that because of his complaint to Sauers, Plaintiff's son would not be transferred off the block and Plaintiff's transfer to another institution would be processed, but Heberling would punish Plaintiff for "ratting" on him. Id. at ¶ ¶ 75-76.

In an effort to regain his contact visiting privileges prior to institutional transfers being reinstated, Plaintiff entered a drug rehabilitation program at the suggestion of Sauers and Perillo. Id. at ¶ 81. In November of 2011, Heberling ordered Plaintiff's move to E block. Id. at ¶ 84. Plaintiff's counselor on E block was Crowder, a personal friend of Heberling. Id. at ¶ ¶ 87-88. Plaintiff informed Crowder of all Heberling's actions and Plaintiff's ongoing issues with staff and Plaintiff requested that he be allowed to file an Inmate Abuse Allegation, but Crowder took no action. Id. at ¶ ¶ 91, 104. Crowder told Plaintiff that she would put him in RHU if he continued to complain. Id. at ¶ 104.

In January 2012, Plaintiff spoke directly to Sauers about Crowder and Heberling and the retaliatory move to E block. Id. at ¶ ¶ 106-11.

On February 29, 2012, Crowder revoked Plaintiff's Z-code status and denied Plaintiff's request for reinstatement of contact visiting privileges. Id. at ¶ 120. Plaintiff alleges that the ongoing pattern of retaliation continued in several ways thereafter.

In this case, at this early stage of the proceedings, Plaintiff's allegations meet the test for application of the continuing violation doctrine. Plaintiff alleges that he was the victim of an ongoing campaign of retaliation and harassment beginning in February of 2011 that continued at least through February 29, 2012, which falls within the statute of limitations. "An action is timely" under the continuing violations theory "so long as the last act evidencing the continuous practice falls within the limitations period…" Brenner v. Local 514, United Brotherhood of Carpenters, 927 F.2d 1283, 1295 (3d Cir. 1991). The revocation of his Z-code status, as well as other allegations subsequent to that, fall within the limitations period and are sufficiently related to the time-barred acts of Defendants.

At this early stage of the proceedings, Plaintiff's allegations are sufficient to invoke the equitable tolling of the continuing violations doctrine. The motion to dismiss should be denied in this regard.

### D.  Rule 25 Dismissal of Deceased Party

Defendants argue that Defendant Heberling should be dismissed from this action under Federal Rule of Civil Procedure 25.

By Notice filed May 16, 2014, Defendants notified this Court that Defendant Heberling passed away on March 1, 2014. ECF No. 12. In an attached proposed order, Defendants

requested that this Court dismiss Defendant Herberling as a party to this action and have his name removed from the docket. ECF No. 12-1.

Rule 25 provides for substitution following the death of a party, stating in relevant part:

> 1. **Substitution if the Claim Is Not Extinguished.** If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed …
>
> 2. […]
>
> 3. **Service**. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noticing death must be served in the same manner. Service may be made in any judicial district.

Fed.R.Civ.P. 25(a).

So then, under the plain language of Rule 25, two contingencies must occur before the ninety-day period begins. "Rule 25(a)(3) requires that both the motion to substitute and the suggestion of death be served pursuant to Rule 5 for parties and pursuant to Rule 4 for nonparties." Giles v. Campbell, 698 F.3d 153, 158 (3d Cir. 2012) quoting 7C, C.Wright, A.Miller & E.Cooper, Federal Practice and Procedure § 1965 (3d ed. 2007) ("[T]he procedures of Rule 4 must be followed in serving the motion on the representative or successor of a deceased party.").

In this case, it does not appear that counsel for Defendants has served any representative of Heberling's estate with the suggestion of death, the first step in the process. The certificate of service attached to the Suggestion of Death indicates that the document was only served on Plaintiff. See ECF No. 12. Accordingly, the ninety day time period in which Plaintiff may file a motion for substitution has not yet commenced.

13

The motion to dismiss Defendant Heberling should be denied.

### E. Personal Involvement of Sauers, Tice, Overmyer, Cole, Repco, Ennis and Smith

Defendants argue for the dismissal of these Defendants because Plaintiff has failed to adequately allege their personal involvement in his claims. ECF No. 31, page 7.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir.1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

Here, as detailed *supra*, and contrary to Defendants' position, Plaintiff makes repeated allegations against Defendant Sauers based on her direct knowledge of and acquiescence in the activities of Heberling and Crowder. Thus, the motion to dismiss should be denied in this regard.

Following a physical altercation with prison staff on March 9, 2012, Plaintiff alleges that he suffered injuries. Plaintiff alleges that Overmyer observed a ruptured blood vessel in Plaintiff's eye, as well as his bleeding wounds, but did not get medical help. ECF No. 20, ¶ 196.

14

Plaintiff alleges that Tice, Overmyer, Ennis, Cole, and Repco were part of a Program Review Committee that met with Plaintiff at his cell door. When Plaintiff complained of wounds that would not heal and severe pain, these Defendants said they would not contact medical. Id. at ¶¶ 193-95. Simon told Plaintiff that he was instructed by Tice, Overmyer, Ennis, and Cole not to provide medical care and treatment, telling Simon that "so long as Plaintiff doesn't kill himself he should be fine." Id. at ¶ 201. And, Plaintiff alleges that Sauers, Tice, Overmyer, Cole, and Ennis denied him mental health care in relation to the revocation of his long-established Z-code status. Id. at ¶ 144. These allegations, taken as true for the purposes of this motion, sufficiently implicate the personal involvement of these Defendants in Plaintiff's claims. The motion to dismiss should be denied as to these Defendants.

However, Plaintiff's allegations against Defendant Smith in her capacity as a Health Care Administrator are based wholly on her participation in the grievance process. See for example id. at ¶¶ 185-86, 240. These allegations are not sufficient to implicate her personally in the legal claims. Furthermore, non-medical prison officials, such as Health Care Administrators, cannot be

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.).[7] The motion to dismiss should be granted in regard to the claims against Smith and she should be dismissed from this action.

### F. Deprivation of food by Murin, Fultenberger, and Griffin

Plaintiff alleges that Murin, Fultenberger, and Griffin were involved in depriving him of food in retaliation for Plaintiff's assault on Defendant Hollis.[8]

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed.App'x 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measure to

---

[7] In her capacity as the Health Care Administrator, Defendant Smith's reliance on the opinion of medical professionals (even if Plaintiff grieved the alleged inadequacies in his medical treatment and Smith was involved in answering those grievances) does not legally indicate that he possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon him. See Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D.Pa.).

[8] Plaintiff's factual allegations here do not state a retaliation claim as Plaintiff's assault upon Defendant Holllis cannot serve as the constitutionally protected conduct necessary to state a retaliation claim. See Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (in order to state a prima facie case of retaliation, a prisoner must demonstrate: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered an adverse action; and 3) that his constitutionally protected conduct was a substantial or motivating factor in the adverse action.).

16

guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). However, "to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Here, Plaintiff has not alleged a continuous or substantial denial of food or water or that he suffered any ill effects from missing the meals. The motion to dismiss should be granted as to this claim. As this is the only claim against Defendant Griffin, he should be dismissed from this action. See ECF No. 20-12, ¶ 274.[9]

### G. Failure to state an Eighth Amendment claim based on denial of medical care

Defendants move to dismiss two of Plaintiff's Eighth Amendment claims based on the denial of medical care.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference can be manifested by an

---
[9] Plaintiff has alleged other claims against Murin and Fultenberger. See ECF No. 20-12, ¶ 271.

17

intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). "Mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White v. Napoleon, 987 F.2d 103, 110 (3d Cir. 1990).

*Denial of Z-code Status*

Plaintiff alleges that Crowder, Sauers, Tice, Overmyer, Cole, Simons and Ennis denied him mental health care in relation to the revocation of his long-established Z-code status. ECF No. 20, ¶ 144. The Court construes Plaintiff's allegations in this regard as focusing on the lack of mental health care and treatment, rather than solely on the revocation of the Z-code status. This allegation is sufficient to state an Eighth Amendment claim based on the deprivation of medical care. The motion to dismiss should be denied.

*Delay in Treatment*

Plaintiff brings a second deliberate indifference claim based on the events of September and October 2012. In late September, Plaintiff was experiencing dizziness, shortness of breath, rapid heartbeat, extreme weight loss and pain. ECF No. 20, ¶ 211. Despite repeatedly signing up for sick call, he was not examined by medical staff until he collapsed and lost consciousness on October 8th. Id. at ¶ 211, *et seq*. See also ECF No. 20-9, page 4. The alleged delay in treatment is sufficient to state a claim of deliberate indifference despite the fact that Plaintiff was medically treated following his collapse.

The motion to dismiss should be denied.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss the original complaint [ECF No. 14] be dismissed as moot in light of the filing of the amended complaint.

19

It is further recommended that the motion to dismiss the amended complaint [ECF No. 30] be granted in part and denied in part, as follows:

- Denied as to claims arising before February 19, 2012, based upon the statute of limitations;

- Denied as to Defendant Heberling based on Fed.R.Civ.P. 25;

- Granted as to the lack of personal involvement of Smith and Smith should be dismissed from this action;

- Denied as to the lack of personal involvement of Sauers, Tice, Overmyer, Cole, Repco, and Ennis;

- Granted as to the Eighth Amendment claim against Murin, Fultenberger, and Griffin based upon deprivation of food, but only Defendant Griffin should be dismissed from this action;

- Denied as to the Eighth Amendment claim based upon the denial of Z-code status; and

- Denied as to the Eighth Amendment claim based upon delay in treatment in September of October of 2012.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: December 22, 2014