IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARIS L. JAMES, | ) | |
| Plaintiff, | ) | Civil Action No. 1:14-cv-00069 |
| | ) | |
| v. | ) | District Judge Rothstein |
| | ) | |
| DEBRA SAUERS, et al, | ) | Magistrate Judge Susan Paradise Baxter |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Sherbine [ECF No. 97] be granted as to the conspiracy and retaliation claims and denied as to the Eighth Amendment claims.

**II.  REPORT**

**A.  Relevant Procedural History**

This civil action was filed in this Court on March 3, 2014. Plaintiff, an inmate in state custody, brought this civil rights action alleging that many Defendants have violated his constitutional rights in numerous ways. After some Defendants filed a motion to dismiss [ECF No. 14], Plaintiff filed a proposed Amended Complaint, which was deemed filed. ECF No. 20. Plaintiff's seventy-five page Amended Complaint details a campaign of retaliation beginning in February 2011. Besides many retaliation claims, plaintiff raises numerous other federal constitutional violations under the First, Eighth, and Fourteenth Amendments.

1

Plaintiff identifies Defendant Sherbine as a registered nurse practitioner responsible for providing medical services and care at SCI Forest. ECF No. 20, ¶15. Defendant Sherbine is represented by private counsel.

Liberally construing Plaintiff's Amended Complaint against Defendant Sherbine, Plaintiff alleges:

- Defendant Sherbine acted with deliberate indifference when she deprived Plaintiff of medical care following the alleged assault on March 9, 2012;

- Defendant Sherbine acted with deliberate indifference when she terminated Plaintiff's access to an asthma inhaler;

- Defendant Sherbine participated in a conspiracy with other Defendants to deprive Plaintiff of all medical and mental health care to conceal and cover-up their misconduct; and

- Defendant Sherbine retaliated against Plaintiff for the alleged assault on a Corrections Officer and Plaintiff's threat of filing a Civil Rights Actions.

ECF No. 20, at ¶ 214; ECF No. 20-12 at ¶¶ 275-276, 302-304.

In response to Plaintiff's Amended Complaint, Defendant Sherbine filed a motion to dismiss. ECF No. 97-2. In opposition to Defendant's motion to dismiss the amended complaint, Plaintiff has filed an opposition brief. ECF Nos. 102-103. This motion is fully briefed and is ripe for disposition by this Court.

### B. Standards of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

2

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906

3

(3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

4

### C. The Prison Litigation Reform Act

#### 1. The Exhaustion Requirement

Defendant Sherbine contends that all of Plaintiff's claims against her[1] should be dismissed for a failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title…by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The Supreme Court has held that the language of this provision "mandates that an inmate exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1855 (June 6, 2016) (emphasis added).[2]

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Id. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). However, an inmate need only exhaust those administrative remedies which are "available" to him. See Robinson v. Superintendent, SCI

---

[1] Although Defendant Sherbine moves to dismiss all claims against her based on the failure to exhaust, Defendant's argument and analysis are limited solely to the Eighth Amendment claim based on inadequate medical treatment following the assault by corrections officers. Accordingly, this Court will limit its analysis to only the claim raised by Defendant.

[2] The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013). See also Moneyham v. Potter, 2016 WL 3476416, at *3 n.6 (M.D. Pa. June 27, 2016) ("[T]he Supreme Court of the United States has held that PLRA exhaustion is a precondition to suit.").

5

Rockview, ___ F.3d ___, ___, 2016 WL 4010438, at *4 (3d Cir. Jul. 27, 2016) quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("[W]e noted that the PLRA requires exhaustion of 'available' administrative remedies and defined such as those that are 'capable of use; at hand.'").

The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[3] So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

### 2. The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, within fifteen days of the incident, the prisoner is required to timely

---

[3] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

submit a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") (formerly known as Central Office) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). An inmate may not file the final appeal to SOIGA until he has received a response from the Superintendent.

### 3. Defendant Sherbine's argument

Defendant Sherbine's entire exhaustion argument is as follows:

> "Instantly, James alleges he complied with the grievance procedure present at SCI Coal Township. With respect to PA Sherbine, James refers to Exhibit F to the Amended Complaint. A careful review of Exhibit F fails to satisfy the exhaustion requirement as to PA Sherbine. PA Sherbine is only peripherally mentioned in an appeal as Nurse Rhonda. Otherwise, PA Sherbine is not identified in the Grievance attached as Exhibit F to the Amended Complaint. As such, James' claims are subject to dismissal for this failure to comply with the PLRA's exhaustion requirement. Accordingly, the complaint must be dismissed as a matter of law."

ECF No. 97-2, page 8-9.[4] Defendant Sherbine submits no documents in support of her argument and instead bases her argument on exhibits attached to Plaintiff's Amended Complaint, particularly Exhibit F.

---

[4] Because Exhibit F pertains only to the Eighth Amendment claim arising out of medical treatment following the assault, Defendant's argument for dismissal of the entire complaint against Defendant Sherbine paints with too broad a brush.

In opposition to Defendant's motion, Plaintiff claims he has fully exhausted his claims against Sherbine. Plaintiff points to Grievances 406283 and 436378 in support of his argument. Plaintiff argues that 406283 relates to Defendant Sherbine's failure to provide medical treatment for the injuries suffered by Plaintiff, and that 436378 relates to Defendant Sherbine's discontinuation of Plaintiff's asthma inhaler. Plaintiff claims that both of these grievances were fully exhausted through the final level of appeal.

This Court notes that the first page of Grievance 406283 [ECF No. 20-6, page 2] is completely illegible. Consequently it is impossible for this Court to determine whether Plaintiff properly identified Sherbine or raised a claim against her therein. The failure to exhaust under the PLRA is Defendant's burden and Defendant Sherbine has failed to meet that burden here. Defendant's motion to dismiss should be denied in this regard.

Defendant Sherbine has not moved for dismissal as to any other claim against her on the basis of failure to exhaust. As a Court may not address the failure to exhaust sua sponte, the exhaustion analysis ends here. See Ray v. Kertes, 285 F.3d 287, 296 (3d Cir. 2002) (stating Congress did not intend to include failure to exhaust among the categories justifying a sua sponte dismissal).

### D. Failure to state a claim of deliberate indifference

Defendant Sherbine moves to dismiss Plaintiff's Eighth Amendment claim based upon a deprivation of medical care following the alleged assault by Correctional Officers.[5]

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v.

---

[5] Because Defendant does not address the Eighth Amendment claim arising out of Sherbine's discontinuation of the asthma inhaler, that claim remains pending.

Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of

9

medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). "Mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White v. Napoleon, 987 F.2d 103, 110 (3d Cir. 1990).

Here, Plaintiff claims Defendant deprived Plaintiff serious medical care for his "ruptured blood vessel in his left eye, swollen and cut over [his] left eye, deep gash-cut on [his] ankle, and injuries suffered from unnecessary and excessive use of force." ECF No. 20, ¶ 275.

Plaintiff maintains that on March 16, 2012, Defendant Sherbine responded to Plaintiff's sick-call and performed a "finger following eye test and flashed a light in Plaintiff's eye." Id. at ¶183. After the examination, Plaintiff alleges Defendant stated he would not lose his eye and sent him back to his cell "in pain, suffering, and [being] deprived of medical care." ECF No. 20, ¶ 183. Plaintiff believes these actions constituted a failure to provide medical treatment in violation of the Eighth Amendment. Id.

Plaintiff acknowledges that Defendant responded to Plaintiff's sick call request. Id. at ¶¶181-183. Additionally, Plaintiff admits that Defendant performed examinations to ensure Plaintiff's eye was not in jeopardy of further damage. Id. However, in his opposition brief, Plaintiff explains that when he reported to Sherbine his "injures were exposed, looked infected and were causing Plaintiff extreme pain, suffering. Plaintiff sought to have his injures cleaned and to receive some type of pain relief." ECF No. 103, page 9. Plaintiff argues that Sherbine acted with deliberate indifference by "taking no reasonable action to relieve that pain, suffering or to clean the infected exposed wounds." Id. Plaintiff's explanation in this regard, when

considered with the factual allegations of the Amended Complaint, is sufficient to overcome Defendant's motion to dismiss at this stage of the proceedings. See Hope v. Pelzer, 536 U.S. 730, 738 (2002) (stating courts may infer the possibility of deliberate indifference when the risk of harm is so obvious); See also Raub v. Cty. of Butler, 2009 WL 577960, at *3 (W.D. Pa. Mar. 5, 2009) (finding that circumstantial evidence of an obvious illness and an unresponsive course of action are sufficient to raise a claim of deliberate indifference above the speculative level).

### E. Failure to state a conspiracy claim

Defendant argues Plaintiff has failed to meet the requisite *prima facie* elements to his conspiracy claim.

In order to state claim for conspiracy under § 1983, the plaintiff must allege (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. Eichelman v. Lancaster Cty., 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007). A conspiracy is defined as a "combination of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose." See Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir.1974). A plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung, 494 F.2d at 814). It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)

Here, it is Plaintiff's burden to plead the elements of a conspiracy with particularity. Plaintiff's only statement towards Defendant Sherbine's alleged conspiracy was that Defendant engaged in a "continued conspiracy to cover-up and conceal their misconduct and retaliate against Plaintiff for having allegedly assaulted a Corrections Officer…" ECF No. 20, ¶ 214. Plaintiff does not provide any further detail or information on Defendant Sherbine's alleged involvement in the conspiracy. The mere allegation of conspiracy is not enough to survive a motion to dismiss. As such, Defendant's motion to dismiss should be granted on this claim.

### F. Failure to state a retaliation claim

Defendant argues Plaintiff has failed to meet the requisite *prima facie* elements to his retaliation claim.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless by constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-24 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must show:

1) The conduct in which he was engaged was constitutionally protected;
2) He suffered "adverse action" at the hands of prison officials; and
3) His constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). It is Plaintiff's burden to establish the three elements of a *prima facie* retaliation claim.

12

Here, Plaintiff broadly alleges retaliation throughout his complaint. Similar to Plaintiff's conspiracy claim, Plaintiff's only allegation for retaliation against Defendant Sherbine was when Plaintiff argued that Defendant and others "retaliate[d] against Plaintiff for having allegedly assaulted a Corrections Office and Plaintiff's threat of filing a Civil Rights action against each defendant for their individual and collective acts." ECF No. 20, ¶ 214. In Plaintiff's opposition brief, Plaintiff cannot seem to point to factual allegations sufficient to satisfy the three prongs of a *prima facie* claim of retaliation against Defendant Sherbine.

After liberally construing Plaintiff's Amended Complaint, Plaintiff has failed to factually plead any of the elements to establish a potential retaliation claim. Simply put, using the word "retaliation" will not be enough to survive a motion to dismiss. As such, Defendant's motion to dismiss based upon a failure to state a claim should be granted.

### III. CONCLUSION

It is respectfully recommended that the motion to dismiss the amended complaint [ECF No. 97] be granted as to the conspiracy and retaliation claims and denied as to the Eighth Amendment claims.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date listed below to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 15, 2016

cc: The Honorable Barbara Rothstein
    United States District Judge